[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff brings this action in two counts, breach of contract and unjust enrichment.
The defendant denies the pertinent allegations in each count:
The factual situation herein is quite simple. Both parties, together with their respective wives, attended on March 21, 1998 a St. Patrick's Day Special Million Dollar Bingo Jackpot at the Foxwoods Resort Casino in Ledyard, Connecticut. Both parties were seated at the same table opposite one another with their respective spouses next to them and also opposite each other. CT Page 4403
Other players were at the line of tables at which the parties and their spouses were seated. Other lines of tables were on either side of the parties herein, with bingo players. Preliminary bingo games with substantial prizes to winners were played. An intermission took place before the second round of games commenced. It is at a time near the end of this intermission that the plaintiff contends that the parties, Nicholas Aronica, and the defendant, Remi Dubuque, reached an agreement to share the million dollar prize money if won by one of them.
The plaintiff alleges, in pertinent part, that just before the intermission ended and the bingo games resumed, while he was seated at his table with his wife, the defendant returned to the table with his wife and suggested to the plaintiff, that if either party won the $1,000,000 jackpot, the winner would split the prize with the other person; that the plaintiff immediately agreed; that the defendant, who had remained standing near his chair, reached across the table and shook hands with the plaintiff to close the agreement.
The defendant denies that this incident took place at all.
The plaintiff further contends that immediately after this took place, the defendant made the same offer to a woman who was also seated at the table but no handshake between them ensued.
Two bingo games then were held. The defendant did not participate in these two games. Then the $1,000,000 jackpot game took place. The defendant won! Within approximately ten minutes, the casino personnel verified defendant's winning bingo card and escorted him to the main hall and publicly presented him with a physically large $1,000,000.00 check on the stage of the main hall — presumably for publicity purposes. The defendant then was escorted to a small room where the details of the actual delivery of the winnings were carried out, including the withholding of that portion of the winnings that were due from him for taxes.
During this period of time, the plaintiff did not mention to the defendant, nor to his wife, the agreement to share the prize, nor that he, the plaintiff, was a co-winner of the prize, with the defendant.
Even when the plaintiff spoke with the defendant and his wife after the prize was awarded to the defendant, the plaintiff did not mention to the defendant that he, the plaintiff, was a co-winner and would share with the defendant in the prize. CT Page 4404
Some days later the plaintiff contacted an attorney who in turn contacted the defendant which lead to this action.
The plaintiff also posted notices about the Foxwoods premises seeking persons that could verify the incident leading up to the agreement between the parties. He also placed advertisements in newspapers. He received responses from two witnesses that testified at this trial, Edward Reid and Candace Medeiros.
Edward Reid testified that while returning to his table during the intermission, he heard two men in the crowd ahead of him talk about sharing prize money if either one of them won, and then shaking hands immediately thereafter. He described this as taking place at the end of the line of four tables that the parties and others were occupying. He further testified that this prompted him to make the same offer to share winnings to his girlfriend, Candace Medeiros, when he returned to their table.
Although Candace did not observe the agreement described by Reid, she supports his statement regarding their agreement to share their winnings if it occurred and that he recited to her the agreement he had overheard.
However, Reid's placement of the parties at the end of the row of tables where the plaintiff and his wife and the defendant and his wife were seated was some feet away from where the plaintiff and his wife testified the agreement actually occurred. Further, Reid has the parties standing in a moving crowd returning to their tables and making this agreement. Although he never previously met either of the two parties and was located to the rear of them, he had no difficulty identifying them when he testified. The defendant denies that the incident, regarding the agreement alleged in the complaint and testified to by the plaintiff and his witnesses, ever took place.
He admits to being seated with his wife at the opposite side of the table from the plaintiff and his wife; that there was some small social conversation among the two couples between bingo games; that the etiquette at bingo games discourages any talk during the games themselves; that he and his wife came to play the bingo games several times a year but only when the prize was substantial — $250,000 and higher; that, he also came frequently to play "craps" in an adjoining hall; that both he and his wife were retired and came to Foxwoods to play and relax and did not necessarily expect to win but were hopeful about CT Page 4405 that possibility; that, as both he and his wife were playing separate bingo cards, they already had two possibilities of winning, the sharing of winnings with the plaintiff would not produce such an improved possibility of winning a substantial sum that it would induce him to enter into an agreement to share with the plaintiff. Further, that plaintiff's allegation that the defendant made the same offer to a woman who also was seated at the table made no sense at all especially since if he had an agreement in place to share his winnings with the plaintiff a further sharing of his winnings with this other woman would require a sharing among three rather than between two participants. The plaintiff appeared to recognize this probability; he, however, raised no question nor concern with the defendant about the propriety of this additional offer to share potential winnings with the woman.
The defendant contends that the plaintiff did not express any concern because he, the defendant, made no such offer of sharing to the woman, just as he made no offer of sharing with the plaintiff.
The court finds, after hearing the trial evidence, and reviewing the exhibits as to both counts of the plaintiff's complaint, that he failed to prove by a preponderance of the evidence that a contract was entered into by the parties to share the winnings by either party of the $1,000,000.00 bingo jackpot at the Foxwoods Casino.
The court has serious concerns with the credibility of the plaintiff's witnesses, specifically with the plaintiff's testimony regarding the offer by the defendant to share any winnings between them; that this took place just as the defendant returned to the table at the end of the intermission; the abruptness of the offer with little preliminary conversation and no explanation for the reason for making the offer; the apparent lack of interest in this event by both spouses; the immediate acquiescence to the offer by the plaintiff without any thought or consideration of the implications of the offer; the immediate initiation of the same offer by the defendant to a third person — a woman at the table.
All of this testimony in the court's view is suspect. It has all the content that would be expected where the sum involved was $10.00, $20.00 or $100.00; but rings irrational, untruthful and highly unlikely in the setting herein set out.
The parties are both retired or semi-retired. Both are mature men seeking a relaxing break from the daily living experience. They invested $500 with a hope or dream that the unthinkable could happen and a million CT Page 4406 dollar prize would fall into the hopeful dreamer's lap. It is inconsistent to believe that such a person, having such high hopes, and realizing the enormously high odds against the realization of that hope, would then suddenly, on the spur of the moment, without any apparent reason, make such an offer to reduce that prize by one-half for the purpose of reducing the impossibly high odds by one-half. Such reasoning flies in the face of the eager, expectant bingo players that have paid $500 each for the prospect of filling a bingo card which would result in sudden riches: a One Million Dollar prize.
Adding to this scene, the further action described by the plaintiff, that the defendant then turned to another bingo player and made the same offer to her. Such action by the defendant is not only inconsistent with the first offer made to the plaintiff, but irrational as well — for the first offer to the plaintiff was of one-half of the $1,000,000; the second offer reduced this to one-third of the $1,000,000 for each of the three parties now involved; that the plaintiff would not react to the subsequent offer to the woman defies logic! Thus the court seriously discounts the credibility of the plaintiff's testimony.
The testimony of the plaintiff's other key witness, Reid, is also flawed. His testimony of overhearing an agreement between the plaintiff and defendant taking place in a moving crowd, while he is somewhere behind them; that he also viewed them shaking hands to cinch the agreement raises credibility issues. But when he states that this scene took place some distance from the spot at where the plaintiff places the scene of the agreement, his testimony becomes suspect.
Therefore, taking into consideration all of the evidence presented at the trial, including testimony and exhibits, determining the facts and applying the applicable law, the court finds that the plaintiff failed to prove by a preponderance of the evidence the issues and claims set out in his complaint.
Thus, judgment may enter for the defendant, Remi G. Dubuque, and against the plaintiff, Nicholas Aronica, together with court costs for the defendant.
Kremski, J.T.R. CT Page 4407